The first case called for oral argument is Lloyd v. Billiter. Counsel, whenever you're ready, you may proceed. Good morning. I trust everyone's kept warm this morning. Yes, sir. As best we can. We're here on the issue, basically, of whether the attorney statute applies to an attorney who worked on a medical malpractice case for five years. Now, the statute is really clear. It's included, of course, in our appendix, and I'd like to refer to it. It has two sections, two parts is the way I see it. The first section, the first part of it actually is just one section with two paragraphs, large paragraphs. The first is about the establishment of the attorney's lien or the existence of an attorney's lien. In other words, how does an attorney get an attorney's lien, similar to how a bank would get a mortgage on a property? The second half is how does an attorney go about enforcing the attorney lien that that attorney already owns or has or possesses in a claim or a file? And on page 29 of our brief is where we set forth the statute, which is 770-5-1, the attorney's lien for fees, semicolon, enforcement. In order to establish the lien, it's very clear the first three words are attorneys at law. So the first idea of getting an attorney's lien is to be an attorney at law. There's no question but that attorney has, at all relevant times, was an attorney at law. It doesn't say partners in a firm attorneys at law. It doesn't say Illinois attorneys at law. It doesn't say attorneys at law that are going to be compensated through a salary. It doesn't say attorneys at law that are going to be compensated through a fee-sharing agreement. It doesn't say attorneys at law. It doesn't limit attorneys at law whatsoever. So, of course, that attorney has to establish the first part of establishing a lien is being an attorney. Because it says clearly that attorneys at law shall have a lien. Then it makes clear what the lien is on, upon all claims, demands, and causes of action, including all claims for unliquidated damages. Thus, Mr. Hess had a claim on all demands, claims, and causes of action from the very beginning. The second paragraph, the court will notice, this is why I established there's two parts to this lien, says to enforce such lien. In other words, we're talking about in the first paragraph only the existence of the lien, the establishment of the lien. Not what attorney Hess has to do to enforce the lien. For example, when you buy a house, you sign a mortgage, there already is a lien. Now, to enforce that lien, maybe you need to go to the reporter's office to foreclose on the lien. Maybe you need to file a claim under the Illinois foreclosure statute. But the lien exists from the very beginning. And that's what I think is the error that the court, in dismissing and in striking the lien, failed to see that the lien exists from its very inception. It was up then to Mr. Hess to enforce the lien. And it's very clear that Mr. Hess, by the court's own docket, and the court should have taken judicial notice of the fact of the attorney lien, because it's very clear the third line says that attorneys of law shall have a lien upon all claims, demands, et cetera, upon which suit or action has been instituted. Well, in the common law record on page 11, the court can see for itself that attorney Hess actually instituted the litigation for the Lloyds. It was a medical malpractice case that Mr. Hess filed on behalf of the Lloyds. Very clear, and from pages 11 to pages 16, it shows that attorney Hess prepared the complaint in the very complaint that says that it's being filed by his attorneys, plural, which would, of course, include the attorney that actually filed it. In the affidavit on page 17, it's necessary to file a medical malpractice claim. On paragraph 1, recorded paragraph 1, Mr. Hess says, I am the plaintiff's attorney in the above action clause. Now, the docket shows clearly that Mr. Hess instituted this action. Thus, he's an attorney of law. He instituted the action. He had a claim from that period of time, which the date of the complaint was February 9, 2004. An entry of an appearance on behalf of a client that establishes the attorney-client relationship. There just can be no doubt whatsoever that for five years, Mr. Hess worked on this medical malpractice case. He was the only attorney for the Lloyds on this case, and he continued to work on the case for five years. The docket is also clear that it shows that the doctor, Miller, the defendant, recognized Mr. Hess as the attorney for the plaintiff's. The court can look at the, oh, bless you. Oh, sorry. Can take notice, again, of its own docket, which shows that all the certificate of service, I've got one here. It's on page 46, where the doctor's, by their attorney, James Neville, the certificate of service is to Mr. Lawrence J. Hess. That's July 6, 2004. And such notice included in, if the court looks at the common law record, as of, I believe, 1 – let me look at that. It's on 92 and 93. The doctor, again, notifies Mr. Hess. But on 93, when Mr. Bland enters his appearance, it's not as a substitute counsel. In other words, when the Lloyds hired Bland to handle their malpractice case unbeknownst to Mr. Hess, behind Mr. Hess's back, through Kowalski and associates, that the contract didn't even appear. Mr. Hess didn't even see about it until this litigation. When Mr. Bland enters his appearance, he says on page 93, Consonality undersigned and enters his appearance as additional counsel for the plaintiffs herein. When was Mr. Hess hired? Excuse me? When was Mr. Hess hired? Mr. Hess was on February 11, 2000, or it would be August 19, 2002. And is there some document that memorializes that relationship? Are you talking about the relationship with the Lloyds and Mr. Hess? Yes. That would be under the original contract when the Lloyds hired Kowalski and associates. The case law is clear. We cite those cases that when a client hires a firm, they hire everybody within that firm. So on August 19, 2002, as an associate working for the Kowalski and associates firm, not just getting the salary, but getting a percentage of the fees that he presented, and that's also, I can show the court, that's in here as well. He was actually hired on that day, and we cite several cases in the brief. Presumably anybody in the firm that did any work at all on that case, research or whatever, presumably they would have the right to have a lien on the settlement. No, Your Honor. Only if it's an attorney could have a statutory attorney lien. Well, that's a problem. Any of the attorneys in the firm that did any work whatsoever, research or anything, would have the right to have a lien on the settlement. If they instituted the lawsuit, if they were responsible for instituting the lawsuit, or if the lawyers placed the claim into their hands for collection. So either, that's what the statute says, Your Honor. Okay. It says that they shall have a lien upon which may be placed in their hands by their clients. So any attorney that gets a claim placed in their hands by the clients, or upon which suit or action has been instituted. So we're saying Mr. Hess both got the action because it was placed in his hands by the client. He was the only attorney dealing with the Lloyds. The Lloyds placed the cause of action in his hands, and also he was the one that actually instituted this lawsuit. So that would mean that any attorney that did that would be able to establish a lien. They wouldn't be able to enforce it at this point, but no one could deny that such a statutory lien exists under this statute. Not a contractual lien, not an equitable lien, but this statutory lien exists. So then all the way up until on page 120. So when Bland came in, they didn't say, By the way, Hess, you're fired. By the way, you have to withdraw. By the way, you have to substitute Bland for your appearance. No, everybody acknowledged, including Bland, a month after Mr. Hess had been discharged by Konowsky & Associates, everybody acknowledged that Bland was going to be additional counsel. Not until I served the notice of statutory lien did any thought of the Lloyds discharging even come into the picture. In fact, on March 24th of 2008, that's on page 118 of the common record, March 24th of 2008 now, mind you, I sent out notice May 15th of 2008. So as of March, the record in the court in Montgomery County showed that Mr. Hess was still attorney for the plaintiff. He was still getting the certificate of service, everybody's notifying him, and there's no breach at all in the attorney-client relationship between him and the Lloyds. In fact, the Sullivan case, the other cases we cite, the Cook County case, I believe that was, shows clearly that if an attorney wants to quit, for example, they have to notify the court, they have to get permission from the court, they have to notify all the parties. I've been in cases where the courts have not let me withdraw when I wanted to withdraw, and it's clearly we don't want attorneys out there acting as if they're not responsible for a case any longer and not notifying the court and not notifying all the other attorneys involved. And that's clearly the law. So we couldn't have a situation in Illinois where one lawyer could fire or say, look, don't work anymore on this case, I want this lawyer to work on this case. And just automatically, even though it's not a substitute of counsel, there's no notice to any of the adverse parties, there's no notice to the court, somehow, magically, that attorney-client relationship is gone and that attorney no longer has any ethical duty to the client and no responsibility to the court whatsoever without any notice to the court. But that's what they're saying should have happened here, is that somehow, magically, when Kanowski wrongfully terminated, without paying him, et cetera, the fees that were due, somehow Kanowski could unilaterally get rid of the statutory rights that Mr. Hess has as well. Now, all payment arrangements with Hess's arrangement with Kanowski were through the Kanowski firm, either by salary or percentage of what he brought in. Is that correct? That is correct, Your Honor, except for the statutory lien of where he has another source of compensation because the lien is not against the clients, it's against the defendants. And that's another real big point of confusion about enforcing this lien. This lien attaches to the claim, but it's enforceable as against the defendants. It's so that the defendants and the client cannot do an end run and subsequent counsel do an end run by the guy who's done five years of work on the case. So this lien is enforceable against the defendants. And we also raise that point here as well, that Mr. Hess had not even begun to petition the court and, in fact, never did file the actual lien or begin to enforce it, other than to notify the defendants, which is clear under the second phase of this statute, that to enforce such a lien, such attorneys shall serve notice in writing upon against whom the claim, the adverse party against whom the claim is made because the source of recovery under the statutory lien, unlike the contractual lien or equitable lien, is actually the defendant and the recovery that there is because of Mr. Hess's actions, five years of work on this medical malpractice case. How was his lien calculated? It was calculated according to the contract, the 2002 contract, in which also the lien statute also says that if there's a, you know, if you're going to get more than, if it could result, the statutory lien could result in Hess, let's say, getting more than the lawyers had contracted for the medical lien, the malpractice statute allows for, then the attorneys get their pro rata share. But, see, we never got there because the court held there was no lien, which is the point I'm at right now is that, yeah, if the judge wants to say, well, you're only entitled to this amount or this amount, but if you look at the notice of lien as they complain, then the court was obligated to take that on its face and then hear evidence on that. But instead, the court somehow, not for the doctors, but for the lawyers who had no dog in the fight because we already agreed everybody was going to get, the attorney fees were going to be put in the court's office. So the lawyers actually have no dog in the fight whatsoever. Instead of saying, yes, I'm going to adjudicate this lien, I'm going to, and as it says in the enforcement part, it says that within five days, the judge shall adjudicate the rights of the parties and enforce the lien. So we never got to the point of what is the value of Mr. Hess's claim. Even if there was no contract, it says that there is a statutory lien as well. In the establishment part of this lien or the existence of the lien that I'm talking about says, in the absence of such an agreement, then it shall be for a reasonable fee. So Judge McGuire could have said, well, yeah, we know you've got a lien because you, whether you sent it on notice or whether you did anything, you did it. You were an attorney of law. You did take, you know, try to collect this money, and therefore there is a statutory lien against any recovery or claim. Now, it might not be enforceable. But he's not asking for a third of the settlement then. Well, we would, if we got to that point, then we would proceed to the third, actually, Your Honor. I was riding piggyback on this notice of lien, which became a red herring. Just rather than me sending out a notice of lien as well, I claim a third in whatever Larry Hess gets for my contingency. So I'm notifying the billeters that they have to deal with me as well, not just with Larry Hess, and not just with, they have to also deal with me. But the, what we would ask for down below would be what the contract shows, which so far it's not before the court because Mr. Hess has another letter from Kanowski that says how much he's entitled to out of this fee, out of the fee, out of the recovery of the fee. So we would present to the court at that time the value of the lien. Right now we're just fighting to say there is a lien. Then once it's, and who can fight that? We're saying the Lloyds have no interest in that. The third is put there. We've all agreed that all the money for all attorney fees are going to come out of that money that's put aside already. So the Lloyds have no dog in this fight, can't even. Okay, now you confused me. But the Kanowski firm has an interest to a lien in this. We would say they wouldn't have, they would have the existence of the statutory lien, but they took no, they never notified the defendants of the statutory lien. They have no right to enforce the lien. All compensation for Hess and his arrangement was through Kanowski, either by a percentage of the percentage that he recovered or by some sort of salary arrangement. If the Kanowskis have an interest in this, isn't your action against the Kanowskis in their recovery of a fee from this fund that he helped create through his arrangements, through his employment arrangement, in effect, with the Kanowski firm? That would be the contractual, under a contractual analysis, yes. But we're not under a contractual analysis. We're construing this statute. It's a statutory lien, which is an additional right that Larry Hess has, regardless of his contractual rights vis-à-vis the Lloyds or vis-à-vis the Kanowski and his associates firm. Let's say he recovered according to the lien, his lien. Right. What percentage of that could Kanowski go after him for? Well, Your Honor, we would have to debate that issue. I've not thought of that. But this is against the proceeds of the settlement. In other words, this is an action. The defendants never protested and said, no, Larry Hess doesn't have a statutory lien. Oh, they just put in, they interpleaded it and said, oh, you can fight, we're leaving. But my concern is it seems that Hess's involvement in this litigation was through Kanowski. The status was established through Kanowski. He had a compensation arrangement with Kanowski. Everything he did was through the Kanowski firm. Bland got substituted for Hess as far as the Kanowskis were concerned, as far as the Kanowski firm was concerned. And if he had settled this case while still with Kanowski, he either would have gotten a salary or a percentage of the percentage. And what you're posing to this court is that rather than that, he should be viewed independently of his relationship with Kanowski, which was the basis both for his getting this litigation and for any compensation from the litigation. No, Your Honor, we're not asking that. Because we're saying the Kanowski contract actually is viable and there is a contractual relationship. We're not denying that a contractual relationship actually exists at all. We're saying there is an additional way of recovery vis-a-vis, let's say Kanowski went bankrupt. Let's say if the action under the statute is against the doctors. Go ahead. You can finish the answer. If the action is against the doctors and the recovery there, then, yes, it's for the court to decide how this should be prorated, as the statute says, according to subsequent attorneys, prior attorneys, according to a reasonable fee, according to how much work they've done, according to the contract. Then the court would have determined the amount of the value of lien. But you can't just say there is no lien here and dismiss the lien willy-nilly because there is a contract. That doesn't make sense. Thank you, counsel. Counsel? May it please the Court. My name is Gerard Griplinder. I'm here representing Lloyd, the apprentice to this medical malpractice claim. We've heard some rather unique arguments here, both that a former employee at a law firm has a lien right and that the former lawyer's lawyer has lien rights. In fact, no one has a lien right in this matter except for Kanowski and his client. Even if Mr. Hess had had a right to file a lien at one time, the lien must fail on two grounds. One, I don't believe anybody is going to, well, I take that back. It was not filed at a time that he was representing these folks. The one thing, he didn't have an active license in the state of Illinois at the time he filed the lien, and therefore could not have been actively representing them in the state of Illinois. And secondly, he did not, as the statute requires, serve the notice of lien upon Dr. Pilking. Rather, he served it upon his attorney in the Illinois Supreme Court case authority, which we cited, saying that that type of filing was inadequate. But more importantly, what is being requested by this court is that employees of law firms with no proprietary interest in those law firms be granted a lien right to be filed after they've been terminated, more than a year after they've been terminated, against cases that they've worked on. And I would ask the court to consider what the effect of holding that would turn out to be in the state of Illinois. It certainly would have established probably a new niche for lawyers representing former employees of law firms in filing liens against every case where they worked. It would lead to mayhem, and certainly it has nothing to do with the purposes of the lien act. In this case, Mr. Hess was hired by contract by the Konosky firm on August 19, 2002. On March 13, rather, there was a contract – I'm sorry, he was hired on May 9, 2001. But Lloyds signed a contract with the Konosky firm on 8-19-02. It is clear in that contract that they hired the Konosky law firm, period. He did not hire Mr. Hess. They hired the law firm, Konosky law firm. It's also clear when you read the contract of employment between Konosky and Hess that he was an employee. It's clear that he had no interest in the business of that firm. And that, for example, if one calls the contract section 2A, it provides that the client is contracted for services of the client's corporation and not of any individual employee. It provides in section 8 that the employee acknowledges that he has no proprietary right or interest in any client. In section 2, it provides that all proceeds received by Hess, the employee, for professional services rendered for the corporation's clients shall be the property of the corporation. And in section 8E4, it provides the employee acknowledges that were the corporation to obtain compliance upon employee's termination, that employee has no proprietary interest due to the coherence of the employee as being fully compensated through his salary and or bonus for all work done while an employee of the corporation. Mr. Hess was fired February 14, 2007, Valentine's Day, as it were. And from that point forward, he had no further connection with the Konosky firm, any of the Konosky clients, or any of the Konosky business. He did not file this claim for lien until May 15, 2008, more than a year after he was terminated. He cannot do that. The claim that he was still a lawyer for the boys in this litigation is preposterous. He was fired. The contract was with the Konosky firm. He had nothing further to do with it. I know of no cases which require an employee of the law firm to withdraw from representation when they're fired by that firm and the litigation proceeds. Certainly there wasn't. In this case, in particular, there was a subsequent contract that Mr. Bland brought in, Mr. Bland's up-counsel to the Konosky firm. So there was actually a dual contract in this matter after Mr. Hess was fired and prior to the settlement of this case and prior to this alleged lien being filed. Quite simply, Mr. Hess had no right to a lien at any time. It was filed on time. It was filed at a time when he did not authorize the practice law in the state of Illinois, and the court's ruling was absolute. Thank you. Thank you, counsel. Counsel? First, just correcting the court to their own degree came forward. They again want to get into the contract rights between Mr. Hess and Mr. Konosky, which is not in dispute. The issue is did Mr. Hess establish a statutory attorney's lien in the Lloyd case, and does he have the right to enforce that statutory lien? But just to rebut what he said in A4, as part of the compensation, and again it's been modified by a letter from Mr. Konosky to Mr. Hess later on, it says the corporation further acknowledges that employees will receive bonus pay as follows, 15% of all fees generated over the base salary with a guarantee. So Mr. Hess did have a contractual interest, even vis-a-vis Mr. Konosky. And the subsequent agreement that he had with Mr. Bland, that Bland and Konosky had, adopts the fee split and says that the fee shall be split between the law firm. Has that been prosecuted? Your Honor, we have a suit pending on that. But yes, there's also a case against the Konosky for breach of contract and for interference with the statutory lien rights that Mr. Hess has. They simply want this court, the Fifth District, to reinterpret Supreme Court law and the attorney lien statute. This court would have to interpret the statutory lien to mean that any employee, if you're an attorney but you're an employee, you don't have the same rights as if you're a partner or you have the fortune and the money to be able to incorporate and hire other people. But if you're working for somebody and you work for five years on the case and your boss doesn't want to pay you your salary, he doesn't want to do anything, even though the Illinois legislature has given you a statutory right against the proceeds, you have no right to go against the proceeds. You can't go against the doctor. You have to go against your employer, your contract. That's the only rights you have. And when it says attorney of law in the statute, it means anybody but you, an employee, a lowly, the low man on the totem pole. And I think that the court has to also consider that, that if it rules in favor of Mr. Konosky, that means that all employees will automatically, if they're attorneys, whether they're of counsel, whether they have some sort of fee-sharing arrangement, they will automatically lose all rights they have under the statutory lien in this case. Not just that. It should be taken care of, as it was here, if they're claiming that Mr. Hess has no rights because he's already been paid. Well, that's the contract action, and they should have brought a contract action against Mr. Hess for claiming this statutory lien and saying that all these sums belong to Konosky and Associates. They didn't do that. Instead, they had the lawyers, who have no say and no dog in this fight right now, bring an action to get the court and obtain a dismissal of a lien that has already been established. That would be like saying to the recorder's office, yeah, the mortgage has been recorded there, but the court is just saying, no, it's not really there, and I'm dismissing it, rather than saying, what's the value of that lien? That's all we're asking the court to do, would be reverse and have the court establish that there is a lien there, and then to determine what the value of Mr. Hess's services were, either under the contract or absent contract, and he finds there was no contract, then what a reasonable fee is for Mr. Hess. Thank you very much. Thank you, counsel. We appreciate the briefs and arguments. The counsel will take the matter under advisement.